IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

ROY ALLEN                                                                          PLAINTIFF

         v.                          CIVIL NO.        3:09-CV-03091

MISHAEL J. ASTRUE, Commissioner
of Social Security Administration                                            DEFENDANT

## MEMORANDUM OPINION

         Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision

of the Commissioner of Social Security Administration (Commissioner) denying his claim for a

period of disability and disability insurance benefits (DIB) under Title II of the Social Security

Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether

there is substantial evidence in the administrative record to support the Commissioner's decision.

*See* 42 U.S.C. § 405(g).

## I.       **Procedural Background**:

         Plaintiff filed a DIB application on September 26, 2006, alleging disability since June 1,

2005, due to a long list of conditions including flat feet, bunions, knee problems, myalgia, acid

reflux, degenerative disease of the lower extremity joints, depression, and anxiety (T. 8, 84-89,

106, 137). Plaintiff was 33 years old at the time of his alleged onset of disability, with an

eleventh grade education, and past relevant work as a home health supervisor (T. 7-8, 12, 107,

111). The Agency denied his application at the initial and reconsideration levels (T.40-41, 56-

58, 61-62). Plaintiff requested an administrative hearing, and on April 23, 2008, Plaintiff  and his

-1-

girlfriend testified before an ALJ (T. 5-36). Following the hearing, the ALJ sent interrogatory questions to a vocational expert, who provided his responses that same day (T. 146-148).

## II.   __Applicable Law:__

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)©. A plaintiff

-2-

must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience.  *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity.  *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

## III.    Applicable Facts

### A.  ALJ's Findings:

The ALJ found that Plaintiff had severe impairments of traumatic arthritis of the knees, ankles and back, and depression, but that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to one listed in the regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1, for presumptive disability (T. 47, Findings 3, 4).

The ALJ found that Plaintiff had the residual functional capacity to perform medium work in that he could lift and carry 50 pounds occasionally and 25 pounds frequently; stand or walk for 6 hours of an 8-hour workday; and sit for 6 hours of an 8-hour workday (T. 48-49, Finding 5). The ALJ found that he was moderately limited in his ability to make simple

-3-

work-related decisions; to understand, remember, and carry out complex decisions; to respond appropriately to usual work-related decisions and routine work changes; and to interact appropriately with supervisors (T. 49, Finding 5). Although he found that Plaintiff was unable to perform his past relevant work, upon consideration of a vocational expert's responses to interrogatory questions, the ALJ found that Plaintiff was able to perform work existing in a significant number of jobs in the national economy such as a production worker, and cashier (T. 53-54, Findings 6, 10). Upon the Appeals Council's denial of Plaintiff's request for review on November 4, 2009, the ALJ's decision became the Commissioner's final administrative decision for judicial review (T. 1-4). See 42 U.S.C. § 405(g).

**B. Medical Evidence:**

A January 27, 2005 VA note indicated Plaintiff had been given a 50% service connected disability rating, 20% for a condition of the skeletal system, 20% for traumatic arthritis and 10% for flat feet. (T. 209).

On February 16, 2005, Dr. Katherine Klaassen, a psychiatrist with the VA, assessed Plaintiff with a mood disorder, depressed type due to chronic pain with anxious features; rule out history of eating disorder behavior; and a GAF score of 60[1] currently and 65 for the past year (T. 202-204). She prescribed Zoloft for Plaintiff's depression (T. 204).

Plaintiff saw Dr. Klaassen again on March 24, 2005 (T. 200-202). Plaintiff indicated that his depression was better on Zoloft (T. 200). He reported that he quit his job as a home

---

[1]A GAF score of 60 falls at the top of the range of 51 to 60 and indicates moderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g. few friends, conflicts with peers or co-workers). DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS (DSM-IV), Axis V, Global Assessment Functioning (GAF) Scale (4th ed. 2000).

-4-

health supervisor stating that the work-load was too great, he had missed work due to lots of appointments, and his pain was a factor (T. 200). She encouraged Plaintiff to find a new job (T. 201)

An x-ray examination on April 24, 2005 of the left knee showed no fracture or dislocation and preserved joint spaces (T. 195, 231-232).  An x-ray examination of the lumbar spine on May 10, 2005, showed only minimal facet osteoarthropathy in the lumbar spine and flexion and extension views failed to reveal any instability (T. 230-231).

Plaintiff underwent a physical examination on May 16, 2005, with Dr. Ananda Yarrozu at the VA Hospital for evaluation of pain in his lower back, knees, bilateral extremities, and his flat feet condition (T. 161-162). Dr. Yarrozu noted Plaintiff's conditions had "no affect in his daily activities" (T. 161). Upon examination, Plaintiff exhibited normal range of motion and no pain during movement of the lumbosacral spine, as well as normal movement in the knees (T.161-162). Plaintiff's motor function was intact without any weakness or atrophy (T. 161). Dr. Yarrozu found that Plaintiff was not limited in standing or walking but did show a mild degree of flat feet as well as bunions (T. 162). Dr. Yarrozu assessed Plaintiff with a normal lumbosacral spine examination (T. 162).

A June 13, 2005, progress record indicated that Plaintiff was 75% compliant with taking Zoloft (T. 189) and the Plaintiff noted that the Zoloft was helpful.  His GAF score was 60 (T. 190).

Primary care progress notes dated June 14, 2005, indicate that Plaintiff complained of some muscle spasms (T. 185). Plaintiff stated that he was out of a job and had not been able to find work over the past few months (T. 185). The physician assessed arthralgia/traumatic arthritis

-5-

and chondromalacia3 (T. 186). Notably, the physician encouraged him to increase aerobic exercise (T. 186).

On September 21, 2005, Plaintiff saw Dr. Klaassen (T. 180). At the time, Plaintiff indicated that he was working with two foster children, which made him feel worthwhile and productive (T. 180). The children were placed in his home by DSH and the Plaintiff indicated that his wife was working. (Id.). Dr. Klaassen assessment was Mood Disorder and his GAF assessment was 60. Dr. Klaassen prescribe Sertraline (anti depressant) 100mg take one and one-half tablet per day (T. 181).

A September 23, 2005 examination indicated "some crepatous w/ the flexion/extension @ the hips bilaterally' and 'some crepatous w/flex/extension" in knees bilaterally along with 'some medial malleus edema noted & tenderness to palp" in the left ankle. (T. 176). The report also notes that the Plaintiff had full Range of Motion in the hips and no effusion was noted in the knees. (Id.).

An x-ray examination of both ankles on November 25, 2005, showed a flat foot deformity, but no other abnormality (T. 169, 229- 230).

An October 5, 2006 series of x-rays on his feet indicated mild bilateral hallux valgus (bunyon), pes planus (flat feet) and degenerative changes related to first metatarsophalangeal joint. (T. 255).

On October 6, 2006 the Plaintiff filed for disability alleging an onset date of June 1, 2005 (T. 84).

A mental health progress record dated October 10, 2006, shows that Plaintiff had stopped taking Zoloft for some time, but started taking it again in the last couple of weeks as he was

feeling "down in the dumps" (T. 245).

VA progress notes dated October 10, 2006, show that Plaintiff continued to be assessed with traumatic arthritis, bilateral knee pain, ankle pain, foot pain, occasional back pain, and occasional neck pain (T. 245). Plaintiff reported that he was currently taking Ibuprofen and Hydrocodone for his pain, though he had not filled the Hydrocodone prescription since March 2006 (T. 245). Upon examination, the physician reported that Plaintiff's knees exhibited no redness, swelling, effusion, or crepitations, and he possessed full range of motion (T. 249).

On March 20, 2007 the Plaintiff was seen by W. Charles Nichols, Psy. D. a clinical psychologists. The Plaintiff stated that he was not receiving any counseling service at the time of the interview.  (T. 265) The Plaintiff also stated that he frequently picks up the house, prepares simple meals for himself and the children, limited yard work, and dusts their wood floors. (T. 266).  Dr. Nichols noted that the plaintiff's thought process was goal-directed and succinct and that he was alert and fully oriented. (T. 268).  Dr. Nichols diagnosed the plaintiff with Major Depressive Disorder, Single Episode, Mild Severity and a GAF of 60. (T. 269).

On April 5, 2007 Dr. Brad Williams performed a mental residual functional capacity evaluation on the Plaintiff and concluded that he was not significantly limited in most areas and Moderately Limited in his ability to understand and remember detailed instructions, carry out detailed instructions, ability to make simple work-related decisions, complete a normal work-day and work week without psychological interruptions, accept instruction and respond appropriately to criticism, and to set realistic goals. (T. 275-276).

Progress notes dated April 18, 2007, show that Plaintiff complained of continuing pain in his knees and requested knee braces (T. 343). He was fitted for knee braces in November 2007

(T. 333, 350, 365).

Plaintiff underwent a mental health consultation at the VA mental health clinic on July 20, 2007, for his depression (T. 339, 352). On mental examination, the psychiatrist , Dr. Reichardt, noted that Plaintiff's affect was appropriate with good stability; his speech was normal; his memory was generally intact; his judgment was intact; and his insight was adequate (T. 339, 352). The psychiatrist adjusted his medications (T. 340, 353).

Plaintiff reported that he was satisfied with his antidepressant on November 7, 2007 (T. 332). A Progress Note on November 7, 2007 indicated that the Plaintiff was elligable for the Care Coordination Home Telehealth program through the VA. The coordinator of the program called the Plaintiff to let him know about the CCHT program and her note states the "Pt hung up before we could tell him about the program. Will take that as not interested." (T. 364).

Plaintiff saw Dr. Charles Keppler on December 10, 2007, when Plaintiff began seeking treatment at a different VA hospital (T. 351, 361). Plaintiff complained of chronic back and hip pain and requested refills of all his pain medications (T. 330, 361). Dr. Klepper assessed Plaintiff with traumatic arthritis and renewed and adjusted his pain medications (T. 329).

Dr. Klepper completed a functional capacity form in May 2008 in which he offered a very restrictive opinion on Plaintiff's physical and mental abilities.

A non-examining State Agency medical consultant, Dr. Bill Payne, completed a residual functional capacity form on May 3, 2007 (T. 318-325). The consultant opined that Plaintiff could perform the full range of medium work activity (T. 318-325).

On July 10, 2007 a VA Progress notes states that the Plaintiff shared the child care of the two children with the wife. (T. 372).

The ALJ ordered a consultative orthopedic examination, which Dr. Alice Martinson completed on July 8, 2008 (T. 143-144, 396-403). Dr. Martinson found no objective signs of a physical abnormality to support Plaintiff's pain complaints (T. 396-397). Also at the request of the Agency, Charles Nichols, Psy.D., performed a consultative mental examination of Plaintiff on March 20, 2007 (T. 265-270). Dr. Nichols diagnosed Plaintiff with major depressive disorder, single episode, mild severity and a Global Assessment Functioning (GAF) score of 60 (T. 269).

IV.  **Discussion**:

The Plaintiff contends that the ALJ decision that the Plaintiff retained the Residual Functional Capacity to perform medium level work was not supported by the evidence. (ECF No. 6, p. 3).  The ALJ found that the Plaintiff had the RFC to perform medium work as defined in 20 CFR 404.1567© in that the claimant can occasionally lift 50 pounds and frequently lift 25 pounds.  He can push and pull within these same limitations.  The claimant can sit, stand and walk for six hours of an eight-hour work day.  However, he is moderately limited in his ability to make simple work-related decisions; to understand, remember and carry out complex decision; to respond appropriately to usual work-relate decisions and routine work changes; and to interact appropriately with supervisors. (T. 48-49).

**RFC Evaluation:**

RFC is the most a person can do despite that person's limitations.  20 C.F.R. § 404.1545(a)(1).  A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004).  "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations."

*Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004).  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations.  *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question."  *Lauer v. Apfel,*  245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace."  *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).  "Under this step, the ALJ is required to set forth specifically a claimant's limitations and to determine how those limitations affect her RFC."  *Id*.

### A.  Physical RFC

The ALJ first cited the opinion of Dr. Yarrozu who was one of Plaintiff's treating physicians and saw the Plaintiff on May 16, 2005 a mere two weeks before the alleged onset date of disability. Dr. Yarrozu noted Plaintiff's conditions had "no affect in his daily activities" (T. 161). Upon examination, Plaintiff exhibited normal range of motion and no pain during movement of the lumbosacral spine, as well as normal movement in the knees (T.161-162). Plaintiff's motor function was intact without any weakness or atrophy (T. 161). Dr. Yarrozu found that Plaintiff was not limited in standing or walking but did show a mild degree of flat feet as well as bunions (T. 162). Dr. Yarrozu assessed Plaintiff with a normal lumbosacral spine examination (T. 162).

An x-ray examination on April 24, 2005, showed no fracture or dislocation and preserved joint spaces (T. 195, 231-232) and on May 10, 2005, showed only minimal facet

-10-

osteoarthropathy in the lumbar spine (T. 230-231).  A September 23,2005 examination indicated

"some crepatous w/ the flexion/extension @ the hips bilaterally' and 'some crepatous

w/flex/extension" in knees bilaterally along with 'some medial malleus edema noted &

tenderness to palp" in the left ankle. (T. 176).  The report also notes that the Plaintiff had full

Range of Motion in the hips and no effusion was noted in the knees. (Id.).  An x-ray examination

of both ankles on November 25, 2005, showed a flat foot deformity, but no other abnormality (T.

169, 229- 230). An October 5, 2006 series of x-rays on his feet indicated mild bilateral hallux

valgus (bunyon), pes planus (flat feet) and degenerative changes related to first

metatarsophalangeal joint. (T. 255).  An October 10, 2006 examination by the VA the Plaintiff's

doctor reported that Plaintiff's knees exhibited no redness, swelling, effusion, or crepitations, and

he possessed full range of motion (T. 249).  On February 14, 2008 a VA Progress Note shows

that the Plaintiff "Ambulated without difficulty".

The ALJ relied also on the examination performed by Dr. Alice Martinson which was

completed on July 8, 2008 (T. 143-144, 396-403). Dr. Martinson found no objective signs of a

physical abnormality to support Plaintiff's pain complaints (T. 396-397).  Dr. Martinson is a

certified orthopedic doctor who performed numerous test on the Plaintiff after a review of his

medical history. The full extent of the doctors examination of the Plaintiff is duly noted in the

ALJ's opinion. Dr. Martinson noted that in "the complete absence of objective signs of physical

abnormality, I have nothing upon which to base any sort of recommendations for work

limitations and nothing upon which to base any sort of impairment rating according to the AMA

gridlines." (T. 397).  Accordingly Dr. Martinson found that the Plaintiff could lift up to 10

pounds continually, 20 pounds frequently and up to 100 pounds occasionally. (T. 398)   She also

found that he could stand, sit and walk up to 2 hours without interruption and could work an 8 hour work day. (T. 399).

Opinions of specialists on issues within their areas of expertise are "generally" entitled to more weight than the opinions of non-specialists. See 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5). *Guilliams v. Barnhart*  393 F.3d 798, 803 (C.A.8 (Mo.),2005), 20 C.F.R. § 404.1527.

Although Plaintiff cites to a January 2005 VA progress note indicating the VA service connected disability ratings he had been given to support his claim of disability under the Act, the Court notes  that Plaintiff indicated that he was working at this time as a home health supervisor (T. 106).  The record does not disclose when the Plaintiff obtained his VA disability rating but notes that he worked for 15 years in the health field.  Notwithstanding the VA disability rating the court must look to the record to deter if the ALJ's decision is supported by substantial evidence.

At the hearing plaintiff testified that his ability to sit is limited to about thirty (30) minutes due to pain and his ability to stand is limited to ten (10) to fifteen (15) minutes due to pain. (T. 15).  The ALJ found that the Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the Plaintiff's RFC. (T. 49).

The court defers to the ALJ's credibility determination, especially where the testimony appears to indicate that plaintiff gave contradictory answers. *Human v. Barnhart*,  2006 WL 2422182, 3 (D.Kan.) (D.Kan.,2006). The ALJ pointed out that on September 21, 2005, Plaintiff indicated that he was working with two foster children, which made him feel worthwhile and

productive (T. 180). The children were placed in his home by DSH and the Plaintiff indicated

that his wife was working. (Id.). On March 20, 2007, in an interview with Dr. Nichols,  the

Plaintiff  stated that he frequently  picks up the house, prepares simple meals for himself and the

children, does limited yard work, and dusts their wood floors. (T. 266). On July 10, 2007 a VA

Progress notes states that the Plaintiff shared the child care of the two children with the wife. (T.

372). The ALJ rightly considered these factors in assessing the Plaintiff's credibility.  *See*

*Riggins v. Apfel*, 177 F.3d 689, 692 (8th Cir.1999) (finding activities such as driving his children

to work, driving his wife to school, shopping, visiting his mother, taking a break with his wife

between classes, watching television, and playing cards were inconsistent with plaintiff's

complaints of disabling pain).

   Dr. Klepper, the Plaintiff's treating physician, opined Roy could only walk one (1) hour

out of eight (8) hours, stand one (I) hour out of eight (8) hours, sit three (3) hours out of eight (8)

hours and lift only 10 pounds, among other limitations. (T. 390).    Plaintiff fist saw Dr. Charles

Keppler on December 10, 2007, when Plaintiff began seeking treatment at a different VA

hospital (T. 351, 361). Plaintiff complained of chronic back and hip pain and requested refills of

all his pain medications (T. 330, 361). Dr. Klepper assessed Plaintiff with traumatic arthritis and

renewed and adjusted his pain medications (T. 329).

   The ALJ correctly discounted the evaluation of the Plaintiff's treating physician. A

treating physician's medical opinion is given controlling weight if that opinion is "well-supported

by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with

the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). These opinions

are not automatically controlling, however, because the record must be evaluated as a whole.

-13-

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir.2005). We will uphold an ALJ's decision to discount or even disregard the opinion of a treating physician where "other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Id. at 920-21 (internal quotations omitted). It is difficult to tell how many times the Plaintiff was seen be Dr. Klepper or what objective evidence Dr. Klepper based his opinion on. It is proper for the ALJ to decline to give weight to the vague, conclusory, and unsupported opinions of treating physician. *Brown v. Astrue*, 611 F.3d 941, 952 (8th Cir. 2010).

The ALJ had the opinion of a  non-examining State Agency medical consultant, Dr. Bill Payne, who completed a residual functional capacity form on May 3, 2007 (T. 318-325). The consultant opined that Plaintiff could perform the full range of medium work activity (T. 318-325).  The ALJ was not satisfied with a non-examining opinion a consultant physician but referred the Plaintiff to Dr. Martinson, an orthopedic doctor, for an examination which was conducted on July 8, 2007. (T. 396).

After her examination Dr. Martinson stated that the Plaintiff had no "asymmetrical antalgic component and stood with a straight spine. He had 50 degrees of forward flexion bringing his fingertips to mid calf and had no palpable spasm upon arising.  He had 15 degrees of extension, lateral bend, and rotation, all without palpable spasm.  His seated root test was negative.  His straight leg raising was limited to 50 degrees bilaterally by hamstring tightness. The fabere test produced low back pain but no leg pain. He had full, free, fluid range of motion of both hips. Deep tendon reflexes were normal and symmetrical at both knees and both ankles. He had no focal moto weakness in either of his lower extremities.  Sensation was normal in both

extremities.  The knee range of motion was from several degrees of hyperextension to 150

degrees of flexion and the ligaments were stable. No palpable effusion or increase local heat was

present in either knee.  She noted some scattered soft tissue clicks but no substantial

patellofemoral crepitus is palpable on either side. The ankles had full range of motion with no

effusion or heat.  She noted that x-rays of both knees and lumbar spine were entirely normal in

all respects.  She specifically found that there was no incongruity of the patellofemoral joints on

either side and no spurring or loss of joint spce in any of the 3 compartments on either side.  She

further found that the x-rays of the lumbar spine revealed 5 mobile segments with well-preserved

disk spaces at all levels.  There was no facet arthropathy and the sacroiliac joints had normal

spacing. Dr. Martinson ultimately stated then in "the complete absence of objective signs of

physical abnormality, I have nothing upon which to base any sort of recommendations for work

limitations and nothing upon which to base any sort of impairment rating according to the AMA

Guidelines."  (T. 396-397).

      Dr. Klepper's cursory notes must be  compared with the opinion of Dr. Bill Payne and the

report provided by Dr. Martinson, an orthopedic specialist, and the other medical evidence in the

file. The ALJ was justified in discounting the opinion of Dr. Klepper concerning the Plaintiff

physical RFC based upon the record as a whole.

    **B.  Mental RFC:**

      As the ALJ noted the case had a mental component as well and the ALJ considered the

Plaintiff's mental limitations in evaluated his RFC. (T. 51).

      Dr. Klepper, who is a general practitioner,  provided a mental evaluation along with his

physical evaluation on May 8, 2008.  Dr. Klepper felt that the Plaintiff's ability to relate in the

work place was only fair or poor to none.  He noted that the Plaintiff had "Major Depressive d/o and severe anxiety.  This affects his ability to interact with others and limits his memory, concentration, and ability to copy with stress."  He also noted that the Plaintiff scored 42 on a Beck Depression Index which indicates severe depression (T. 392).  The Plaintiff was still capable of handling his VA disability benefits. (T. 394).

The ALJ discounted the opinion of Dr. Klepper concerning the Plaintiff's mental limitation and based upon the record the court cannot say that the ALJ committed error in doing so.

The Plaintiff was first diagnosed with a Mood Disorder on January 27, 2005 (T. 204). Prior to that time there is no history that the Plaintiff had any mental disorders. On February 16, 2005, Dr. Katherine Klaassen, a psychiatrist with the VA, assessed Plaintiff with a mood disorder, and a GAF score of 60 currently and 65 for the past year (T. 202-204). She prescribed Zoloft for Plaintiff's depression (T. 204).  The medication for depression seemed to work initially.  Plaintiff saw Dr. Klaassen again on March 24, 2005 (T. 200-202) and  indicated that his depression was better on Zoloft (T. 200). He reported that he quit his job as a home health supervisor stating that the work-load was too great, he had missed work due to lots of appointments, and his pain was a factor (T. 200). She encouraged Plaintiff to find a new job (T. 201). Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for benefits. *See, e.g., Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir.2004); *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir.1987); see also *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir.1983) (affirming a denial of benefits and noting that the claimant's impairments were responsive to medication). *Warre v. Commissioner of Social Sec. Admin*. 439

F.3d 1001, 1006 (C.A.9 (Or.),2006).  In addition it is clear that his treating psychiatrist was encouraging him to return to work.

A June 13, 2005, progress record indicated that Plaintiff was 75% compliant with taking Zoloft (T. 189) and the Plaintiff noted that the Zoloft was helpful.  His GAF score was 60 (T. 190).  A mental health progress record dated October 10, 2006, shows that Plaintiff had stopped taking Zoloft for some time, but started taking it again in the last couple of weeks as he was feeling "down in the dumps" (T. 245). A Progress Note on November 7, 2007 indicated that the Plaintiff was elligable for the Care Coordination Home Telehealth program for treatment of depression through the VA.  The coordinator of the program called the Plaintiff to let him know about the CCHT program and her note states the "Pt hung up before we could tell him about the program.  Will take that as not interested."  (T. 364). On March 20, 2007 the Plaintiff was seen by W. Charles Nichols, Psy. D. a clinical psychologists and the Plaintiff stated that he was not receiving any counseling service at the time of the interview.  (T. 265)

An ALJ may properly consider the claimant's noncompliance with a treating physician's directions, *Holley v. Massanari,* 253 F.3d 1088, 1092 (8th Cir.2001), including failing to take prescription medications, *Riggins*, 177 F.3d at 693, or seek additional psychiatric treatment, *Banks v. Massanari,* 258 F.3d 820, 825-26 (8th Cir.2001) (ALJ properly discounted claimant's complaints of disabling depression as inconsistent with daily activities and failure to seek additional psychiatric treatment).

When the Plaintiff was seen by W. Charles Nichols on March 20, 2007 he noted that the plaintiff's thought process was goal-directed and succinct and that he was alert and fully oriented. (T. 268).  Dr. Nichols diagnosed the plaintiff with Major Depressive Disorder, Single

-17-

Episode, Mild Severity and a GAF of 60. (T. 269).

On April 5, 2007 Dr. Brad Williams performed a mental residual functional capacity evaluation on the Plaintiff and concluded that he was not significantly limited in most areas and Moderately Limited in his ability to understand and remember detailed instructions, carry out detailed instructions, ability to make simple work-related decisions, complete a normal work-day and work week without psychological interruptions, accept instruction and respond appropriately to criticism, and to set realistic goals. (T. 275-276).

Plaintiff underwent a mental health consultation at the VA mental health clinic on July 20, 2007, for his depression (T. 339, 352). On mental examination, the psychiatrist , Dr. Reichardt, noted that Plaintiff's affect was appropriate with good stability; his speech was normal; his memory was generally intact; his judgment was intact; and his insight was adequate (T. 339, 352). Dr. Reichardt diagnosed the Plaintiff with Mood Disorder NOS (T. 340) and she adjusted his medications (T. 340, 353).

Based upon all of the medical evidence the Court finds that the ALJ did not commit error in discounting the opinion of the Plaintiff's treating physician and that the RFC assessment assigned by the ALJ to the Plaintiff was proper.

**V.**   **Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

IT IS SO ORDERED this 11th day of February 2011.

/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE